## Ex parte LYMAN.

(District Court, N. D. Georgia. November 19, 1917.)

CRIMINAL LAW ⚖➡1216(2)—SENTENCE TO IMPRISONMENT—COMMENCEMENT OF TERM.

Petitioner was convicted of a criminal offense and sentenced to imprisonment at San Quentin by a federal court in California. Pending error proceedings he gave a supersedeas bond and fled to Europe. He returned, and was again arrested and convicted of a separate offense in a federal court in New York, and sentenced to a term of imprisonment at Atlanta. During such term the judgment in California was affirmed, and he was again sentenced for the original term, to be confined at Atlanta. *Held,* that such term did not begin to run from the term of his second arrest, nor from the time of imprisonment under the New York sentence, but at the earliest from the time of his resentence, or from the time the warrant of commitment thereunder was received by the warden at Atlanta.

Petition by John Grant Lyman against Fred G. Zerbst, Warden of the United States Penitentiary at Atlanta, for a writ of habeas corpus. Writ denied.

See, also, 241 Fed. 945, 154 C. C. A. 581.

Arthur G. Powell and W. Carroll Latimer, both of Atlanta, Ga., for petitioner.

John W. Henley, Asst. U. S. Atty., of Atlanta, Ga., for respondent.

NEWMAN, District Judge. The petitioner, John Grant Lyman, says in the paper he has presented to the court that he is unlawfully detained in the United States penitentiary at Atlanta, Ga., and is being unlawfully restrained of his liberty by one Fred G. Zerbst, who is warden of said penitentiary. The petitioner, Lyman, prays for the issuance of an order as follows:

"Your petitioner prays for an order to show cause why a writ of habeas corpus should not issue to Fred G. Zerbst, ordering him to bring the body of your petitioner before this honorable court, that your petitioner may be discharged from said unlawful restraint and detention aforesaid."

On this petition an order was made in conformity with the prayer, directing that Fred G. Zerbst, warden, be served with a copy of the petition and this order, and that he show cause on the 12th day of November, 1917, at 10 o'clock a. m., why the prayer of the petition should not be granted and the order issued as prayed.

Fred G. Zerbst was duly served, and appeared and made answer to the petition. When the matter came before the court, the petitioner's wife stated to the court that she was unable, and the petitioner himself was unable, to employ counsel to represent him, whereupon the court appointed Arthur G. Powell, Esq., and W. Carroll Latimer, Esq., to represent the petitioner. They have done so, and the question is now before the court as to whether the writ of habeas corpus should issue.

An amendment was filed by the counsel representing Lyman, and I am considering this question on the original petition and the amendment alone, to ascertain, first, whether there is anything stated therein

which would entitle the petitioner to relief under the writ, if it were issued; and I am perfectly satisfied that the petition does not show such facts as would justify the court, in any view of it, in granting the petitioner relief under a writ of habeas corpus, if the same were allowed.

It appears that the petitioner was convicted in the United States District Court for the Southern District of California of the crime of using the mails in the execution of a scheme to defraud, in violation of section 215 of the United States Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1130 [Comp. St. 1916, § 10385]), and that he was sentenced, on January 9, 1914, to the state penitentiary at San Quentin, Cal., for a term of 1 year and 3 months. The case was taken, by writ of error, to the Circuit Court of Appeals for the Ninth Circuit, and was affirmed by that court on May 14, 1917. 241 Fed. 945, —— C. C. A. ——.

From the petition it appears that when the petitioner here took his case to the Circuit Court of Appeals, as stated, he gave bond in the sum of $20,000, conditioned for his appearance if the judgment of the District Court for the Southern District of California should be affirmed; that immediately upon his release on bail he fled to Europe, and that thereafter, in February, 1916, he was arrested in St. Petersburg, Fla., taken before a United States commissioner, and thereupon removed to the Southern District of New York; that he was thereafter convicted in the District Court for the said Southern District of New York of using the mails to effect a scheme to defraud, and on the 9th day of June, 1916, he was sentenced to a term of 18 months in the United States penitentiary at Atlanta, Ga., and delivered to the warden to begin the service of said sentence, which said sentence would expire October 22, 1917.

On receipt of the mandate of the affirmance of the judgment of the District Court for the Southern District of California, said mandate was duly entered on the records of that court, and on July 2, 1917, that court sentenced Lyman to 1 year and 3 months in the United States penitentiary at Atlanta, Ga.; the designation of the Atlanta penitentiary being made in pursuance of a letter from the Attorney General of the United States designating the United States penitentiary located at Atlanta, Ga., as the place of confinement of John Grant Lyman in lieu of San Quentin, Cal.

Petitioner's claim has been ably presented by his counsel, and the contention is that his original sentence in California, as I understand it, began to run when he was arrested by the officers of the United States in Florida, and, if not then, at the time of his arrival at the United States penitentiary in pursuance of the New York sentence; that is, the contention is that, notwithstanding the fact that he had taken the California case, by writ of error, to the Circuit Court of Appeals for the Ninth Circuit, and his sentence had been superseded by his giving bond in the sum required by the court, and that no order had been made by either the Circuit Court of Appeals for the Ninth Circuit or the District Court for the Southern District of California, the sentence began to run from the time he was arrested for another offense by

the United States, or at least, as petitioner alleges, from the time he was received at the penitentiary under his New York sentence.

I am wholly unable to see how this contention can be sustained. It is alleged in the petition that the appeal of Lyman to the Circuit Court of Appeals in California was stricken from the docket, and that his bondsmen secured a warrant for his arrest as a fugitive from justice. Lyman claims that when he was taken to New York from Florida he protested against such action, and asked to be taken to California to serve his sentence at San Quentin, and that upon being brought before the United States commissioner at Tampa, Fla., he formally surrendered himself and asked to be removed to California, and asked to be allowed to serve his sentence there; that he also telegraphed the court in California, asking that his stay of execution be canceled, his appeal withdrawn, and that he be permitted to serve his sentence; that he wrote to Judge Wellborn, judge of the Southern District of California, twice, once from Lucerne, Switzerland, stating that he would return when wanted, and again from Boston, Mass., on his return to this country; that he was hiding from his bondsmen, who were blackmailing him, and constantly calling for money, and threatening to give him up if he did not pay; that he paid one of his bondsmen $2,500, two weeks before his arrest, to avoid such contingency.

There is nothing shown from the California court, except the commitment first to San Quentin, and then, after the determination of the case by the Circuit Court of Appeals, his sentence to the penitentiary at Atlanta. No record is presented showing the striking of the case from the docket, or any record showing the bond, although this latter is assumed here to be true. If the case was stricken from the docket in California, it was for some reason not developed here, and must be presumed to have been for a satisfactory reason, for the court subsequently decided the case and returned its mandate to the District Court.

I do not think there is anything in any of these matters which are contended for here which would justify this court in saying more than that the sentence may have commenced to run concurrently with the New York sentence, either at the time it was last imposed, July 2, 1917, and to the penitentiary at Atlanta, or upon his being received in the penitentiary at Atlanta under the California sentence, which appears to have been on July 9, 1917; and, considering either of these dates to be the time when his sentence from the California court commenced to run, it does not expire for nearly a year yet, so that there is no illegal confinement of Lyman by the warden in the penitentiary at Atlanta.

On the ground, therefore, that no relief could be granted him on the facts stated, even if the writ of habeas corpus should issue, the issuance of the writ will be denied.